UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD BERGENSTEIN, *et al.*, | ) | Case No.: 1:04 CV 1373 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| BHUPINDER S. SAWHNY, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Now pending before the court are: (1) the Motion to Dismiss for Lack of Federal Jurisdiction filed by Defendants Bhupinder S. Sawhny, M.D. ("Dr. Sawhny"), Andrea Boyd ("Boyd"), and Neurosurgical Associates, Inc. ("Neurosurgical Assoc.") (ECF No. 71); and (2) the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendant Yannick Grenier ("Dr. Grenier"), (ECF No. 73), (Dr. Sawhny, Boyd, Neurosurgical Assoc., and Dr. Grenier, together "Defendants"). For the following reasons, both Motions are granted.

**I. PROCEDURAL HISTORY**

On July 20, 2004, Plaintiffs Leonard Bergenstein and Dayanira Bergenstein (together, "Plaintiffs") filed the above-captioned suit against Defendants, as well as Southwest General Health Center ("Southwest General"), Robert S. Redlich ("Redlich"), Michael S. Stephens ("Stephens"),

Allison Esenwine ("Esenwine"), and Sampath Kumar V. Alapati ("Alapati").[1] This lawsuit seeks damages for medical negligence surrounding Leonard Bergenstein's 2003 spinal surgery and subsequent complications resulting from post-surgical steroid treatment.

## II. LAW AND ANALYSIS/DIVERSITY JURISDICTION

### A. Determining Citizenship

Defendants argue that this court lacks subject matter jurisdiction to hear the above-captioned action and move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiffs filed their Complaint on July 20, 2004, and jurisdiction was premised on diversity of citizenship. (*See* Compl. ¶ 6.) Diversity jurisdiction is established only when a controversy "exceeds the sum or value of $ 75,000" and is "between citizens of a State and citizens or subjects of a foreign state . . . ." 28 U.S.C. § 1332(a). In multiple party litigation, this means that no plaintiff and no defendant may be a citizen of the same state. It is Defendants' position that Plaintiffs were citizens of Ohio at the time they filed their Complaint. As Defendants are also citizens of Ohio,[2] they argue that diversity of citizenship does not exist and the case must be dismissed. Since the subject matter jurisdiction of the federal court is involved, the issue of a party's citizenship may be raised at any time, by any party or the court itself. Fed. R. Civ. P. 12(h)(3).

An individual is deemed to be a citizen of the state where he or she is domiciled. *See Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (citations omitted). One's previous domicile is not lost until a new one is acquired. *See id.* (citations omitted). Domicile is determined by two

---

[1] On December 2, 2004, Plaintiffs stipulated to the dismissal of Southwest General, Redlich, Stephens, Esenwine, and Alapati. Consequently, only Sawhny, Grenier Boyd and the Neurosurgical Assoc. remain as Defendants.

[2] Plaintiffs do not disagree that Defendants are citizens of Ohio.

-2-

factors: (1) residence in the domicile; and (2) the intention to remain there indefinitely, or the absence of any intention to go elsewhere. *See id.* (citations omitted.); *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th.Cir. 1973).

It is well-settled that "diversity is determined at the time of the filing of a lawsuit." *Curry v. United States Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citations omitted.) In Paragraph 1 of the Complaint, Plaintiffs allege that they resided in Hernando, Mississippi, at the time of filing their Complaint, on July 20, 2004. (Compl. ¶ 1.) However, Defendants dispute that Plaintiffs were domiciled in Mississippi at the time they filed their Complaint and point to the deposition testimony of both Leonard Bergenstein and Dayanira Bergenstein.

At his deposition, Leonard Bergenstein testified:

> Q. You've been at the Clague Road address sine May of this year, 2005 --
> A. Yes.
> Q. --Correct?
> A. Yes.
> Q. And then what I got confused on was that you indicated that you had been, for about a year before that, at the Plainfield Avenue address in Brooklyn?
> A. Yes.
> Q. But you also said you moved there in May of 2003.
> A. It was one year, 2004.
> Q. And when you say in Brooklyn, is that Brooklyn as in the Cleveland area?
> A. Um-hum.
> Q. Where did you live before the Plainfield Avenue address?
> A. Hernando, Mississippi.
>             * * *
> Q. The Hernando, Mississippi location, did you own that house or rent it?
> A. No. We rented that.
> Q. It was an apartment or a home?
> A. It was a home.
> Q. You rented it - - when you came to Ohio in May of 2004, were you still renting the Hernando, Mississippi location or were you out of that?
> A. No. We were out.
> Q. You did not intend to return to the Hernando, Mississippi location?
> A. No.
> Q. Did you intend to return to Hernando, Mississippi at all?

> A. No.
> Q. Did you intend to return to Mississippi or Tennessee at that point?
> A. No.

(Leonard Bergenstein Dep. at 103-106, ECF No. 71-2.)

As Leonard Bergenstein's deposition testimony makes clear, Plaintiffs moved from Hernando, Mississippi, in late April or early May of 2004, to Ohio. Plaintiffs did not thereafter maintain any residence in Mississippi and Plaintiffs did not intend to return to Hernando, Mississippi.

These facts were confirmed by the testimony of Dayanira Bergenstein, at her deposition:

> Q. How long have you lived at the Clague Road address?
> A. It's going to be two years this summer in May. May – by the end of April. I don't remember. I think its April or May. I'm not sure.
> Q. Okay. As you recall, you moved to the Clague Road address in April or May of 2005; correct? That's correct?
> A. Yes.
> Q. And that's what I understood from your husband's deposition as well. Where did you live before Clague Road?
> A. We lived in Brooklyn.
> Q. That's in Brooklyn, the suburb of Cleveland?
> A. Yes.
> Q. How long did you live in Brooklyn, Ohio?
> A. One year.
> Q. From about May of 2004?
> A. Yeah.
> Q. That's also what your husband testified to. Did your husband live with you at the Brooklyn, Ohio address?
> A. Yes.
> Q. Was that address 7415 Plainfield Avenue?
> A. Yes.
> Q. During that time frame of May, 2004 until April or May of 2005, when you moved to Clague Road, did you live anywhere else?
> A. No.
> Q. So the Brooklyn, Ohio address was your one and only residence from May, 2004 to May, 2005; correct?
> A. Yes.
> Q. And your husband lived with you during that time frame?
> A. Yeah.

> Q. Did he have any other residences?
> A. Uh-huh.
> Q. Uh-huh, meaning "no"?
> A. No. I'm sorry.
> Q. That's okay. I want to be clear on these questions. . . .

(Dayanira Bergenstein Dep. at 5-6, ECF No. 71-3.)

Dayanira Bergenstein's deposition confirms that at the time of the filing of this suit, Plaintiffs had left Mississippi, relocated to Ohio, and did not intend to return to Mississippi.

As previously stated, domicile is determined by two factors: (1) residence in the domicile; and (2) the intention to remain there indefinitely, or the absence of any intention to go elsewhere. *See Von Dunser*, 915 F.2d at 1072 (6th Cir. 1990); *Stifel*, 477 F.2d at 1126. There is no question that Plaintiffs had previously established a domicile in Mississippi before coming to Ohio. As Leonard Bergenstein's affidavit and deposition make clear, Plaintiffs intended to leave Mississippi and reside in Ohio, for the purpose of undergoing medical treatment; they did not intend to return to Mississippi. (Leonard Bergenstein Aff. ¶ 3.)

Plaintiffs argue the cited deposition testimony does not address the relevant question for the purpose of determining whether diversity jurisdiction exists. They maintain that the relevant inquiry is whether Plaintiffs were citizens of Ohio, and that turns on whether Plaintiffs intended to remain in Ohio,[3] not whether Plaintiffs intended to return to Mississippi. Diversity jurisdiction is only destroyed in this case if Plaintiffs are citizens of Ohio.

### B. Burden of Proof

First, as an initial matter, the court notes that Plaintiffs erroneously argue that "Defendants must prove by clear and convincing evidence that Plaintiff's changed their domicile to Ohio [and

---

[3] It is undisputed that Plaintiff resided in Ohio at the time the Complaint was filed.

that] Defendants have failed to so prove." (Pls.' Mot. in Opp'n at 5, ECF No.75.) It is well settled that "the party seeking to invoke federal jurisdiction must allege its existence, and, if there is a dispute, that party has the burden of proof." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 300 (4th ed. 2003) (citing *Cameron v. Hodges*, 127 U.S. 322 (1888)). As Plaintiffs are the party seeking to invoke federal jurisdiction in the instant matter, Plaintiffs bear the burden of proof.

### C. Leonard Bergenstein's Affidavit

As previously stated, domicile is determined by two factors: (1) residence in the domicile; and (2) the intention to remain there indefinitely, or the absence of any intention to go elsewhere. *See Von Dunser*, 915 F.2d at 1072; *Stifel*, 477 F.2d at 1126. Plaintiffs offer the affidavit of Leonard Bergenstein in support of their argument that they were not domiciled in Ohio at the time they filed their Complaint.[4] (*See* Pls. Mot. in Opp'n 6.) His affidavit declares that he and his family did not intend to remain in Ohio indefinitely. (Leonard Bergenstein Aff. ¶ 5, ECF No.75-2.) In reviewing

---

[4] Plaintiffs cite the unpublished case of *In re: Richardson-Merrell, Inc. "Bendectin" Products Liability Litigation*, 1986 U.S. Dist. LEXIS 30825 * 8 (S.D. Ohio.1986) for the notion that Plaintiffs' declaration of citizenship in their Complaint should be given great weight. (Pls.' Opp'n at 5, ECF No.75.) However, that case hardly supports Plaintiffs' position and it is not analogous on the facts. In *Bendectin Products*, the plaintiffs argued that their assertion of Georgia citizenship in their complaint was a mistake and that they were actually citizens of Ohio, in an attempt to defeat federal diversity jurisdiction invoked by the Ohio defendant upon removal from the state court. *Bendectin Products*, 1986 U.S. Dist. LEXIS 30825 at *4, 6. After evaluating all of the circumstances of the case, the court found that the only evidence supporting plaintiffs' assertion that they were not citizens of Georgia was their self-serving affidavits and the fact that after they filed their complaint, they moved to Ohio. *Id.* at *7. The court's statement that "great weight be given to plaintiffs' declaration of Georgia citizenship in their complaint" (*id.*) was based on the courts opinion that plaintiffs should be estopped from "asserting, after the verdict, that his original declaration of jurisdiction was wrong . . . ." *Id.* at *9. As such, *BendectinProducts* does not support Plaintiffs' argument that their declaration of citizenship, as stated in their Complaint, should be given great weight by this court in this case.

this declaration of a party regarding his intention, the court must carefully weigh it against any self-serving motives that party may have. *Markham v. Vancura*, 2002 WL 1291807 * 1 (N.D. Ill., 2002) (citing *District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941)). Although Leonard Bergenstein's affidavit employs legal language by stating that he and his family's "return to Cleveland, Ohio, was intended to be temporary, though *not indefinite*," this assertion is conclusory and fails to assert any relevant facts. (Leonard Bergenstein Aff. ¶ 5, emphasis added.) Accordingly, it is not dispositive and this court must still determine whether Plaintiffs intended to remain in Ohio indefinitely.

### D. Plaintiffs' Intention

Although Plaintiffs maintain they "intended to make their home somewhere other than Ohio" (Pls.'s Opp'n at 5), Plaintiffs fail to show, or even allege, where it was that they did intend to make their home. Moreover, Plaintiffs' fail to show, or even allege, that they had any prospects for leaving Ohio at the time they filed their Complaint. There is a difference between intention and desire. *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir. 1979). As the Fifth Circuit stated in *Hardin v. McAvoy*, 216 F.2d 399, (5th Cir.1954), in determining where a plaintiff is domiciled,

> [i]t is not important if there is within contemplation a vague possibility of eventually going elsewhere, or even of returning whence one came. If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile. . . . [A] mere detached, indefinitie and ambulatory future intention to possibly or probably effect a change in domicile, not attached to and fixed at a particular residence at a particular place and time is of no real significance.

*Id.* at 402-03 (citations omitted). Likewise, the Supreme Court has held that a so called "floating intention" to move at some undetermined time in the future will not defeat the acquisition of a new domicile for diversity purposes. 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H.

COOPER, FEDERAL PRACTICE AND PROCEDURE § 3613 (2d 1984) ("WRIGHT, ARTHUR R. & MILLER") (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). Courts have held that an intention to return to a former domicile upon the occurrence of some specific reasonably foreseeable event, such as a graduation or end to a training period is not a "floating intention."[5] In the instant case, Plaintiffs have testified at their depositions that they had no intention of leaving Ohio to return to their former domicile, Mississippi. They intended to remain in Ohio for as long as Leonard Bergenstein's medical condition required. Leonard Bergenstein stated that Plaintiffs move to Ohio for the "sole purpose of undergoing medical treatment" and that he did not intend to leave Ohio until after he "regained [his] mobility." (*See* Bergenstein Aff. ¶¶ 3.) He was not sure when and if he would leave Ohio. This was contingent on when he was again healthy and where he might find a job, which could have been in any state, including Ohio. This is evidenced by his deposition testimony below:

> Q. What intentions, if any, did you have with respect to where you intended to reside from that point forward.
> A. We really weren't sure. Whatever the best option was contractually that I would come up with after my surgeries and/or employment-wise.

(Leonard Bergenstein Dep. at 105, ECF No. 71-2.)

In *Hawes*, 598 F.2d 698, the First Circuit held that a plaintiff's move to the State of New York for the purposes of obtaining medical treatment was considered a deliberate decision to be domiciled in the State of New York for an indefinite period of time. *Hawes*, 598 F.2d at 702. By analogy to *Hawes*, Plaintiffs' decision to move to Ohio for the purpose of obtaining medical treatment for Leonard Bergenstein and to remain for as long as it took to regain his mobility, is a

---

[5] *See, e.g.*, *Gates v. Commissioner of Internal Revenue*, 199 F.2d 291, 294 (10th Cir. 1952).

decision to be domiciled in Ohio for an indefinite period of time. This is especially so in light of the fact that he had no job and indicated that his leaving Ohio in the future was also predicated on where he might find the best option for employment.

### E. Statelessness

According to Plaintiffs, they were not domiciled in Ohio at the time of the filing of their Complaint. The only place they offer as an alternative is Mississippi on the theory that one's previous domicile is not lost until a new one is acquired. *See Von Dunser*, 915 F.2d at 1072. Yet it is clear to this court, as discussed *supra*, that Plaintiffs were not domiciled in Mississippi at the time they filed their Complaint because it was their intent to leave Mississippi and not return. Thus, the court must conclude that Mississippi was not Plaintiffs domicile, as one's domicile is "that one 'place where he has his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" ERWIN CHEMERINSKY, FEDERAL JURISDICTION 297 (4th ed. 2003) (quoting CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS 146 (5th ed. 1994).)

If Plaintiffs were not domiciled in Mississippi, and this court were to find that they were also not domiciled in Ohio, that would render Plaintiffs stateless. A stateless United States citizen destroys complete diversity under 28 U.S.C. § 1332(a). *Nat'l City Bank v. Aronson*, 2006 U.S. Dist. LEXIS 89696 *7 (S.D. Ohio 2006) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)). Rarely does a court conclude that an individual is stateless. *See* 13B WRIGHT, ARTHUR R. & MILLER § 3612 (stating "it usually should be possible to assign state citizenship to any American citizen who is a party to a diversity suit.").

The problem of Plaintiffs' domicile in the instant case is even more complicated than usual because Plaintiffs have testified that they had no intent to return to their former domicile, have disputed their alleged domicile in Ohio, and yet have failed to articulate any intended future domicile.  WRIGHT, ARTHUR R. & MILLER provide an example which is helpful.

> Let us suppose that a law teacher with a domicile in Texas accepts a one year visiting appointment at a law school in Michigan.  Shortly after arriving to teach in Michigan the professor receives and accepts an invitation to join the faculty of a law school in Massachusetts on a permanent basis the following year.  He therefore sells his Texas [h]ome and procures a Michigan driver's license and license plates for use during the year that he will be in the state.  At this point, the professor certainly no longer is domiciled in Texas and has not yet become domiciled in Massachusetts because of the absence of any physical presence there.  Since it would be unacceptable to say that he has no domicile- that is, no state citizenship- for diversity purposes, the most logical conclusion is that the professor is a citizen of Michigan during his stay there, despite his intention to leave at the end of the academic year.

WRIGHT, ARTHUR R. & MILLER § 3613.  As this example teaches, the most logical conclusion in the instant case is that Plaintiffs were domiciled in Ohio at the time they filed their Complaint.  They left Mississippi  without maintaining any residence there or having any intent to return.  Furthermore, unlike the professor in the hypothetical above, Plaintiffs did not have any fixed time to leave Ohio or any fixed place to go upon leaving.  Consequently, there is even more reason to conclude that Ohio is Plaintiffs' domicile than there is to conclude that the domicile of the law professor was Michigan.  Thus, reaching the conclusion that Plaintiffs were domiciled in Ohio, is not merely based on the fact that they left Mississippi.  Their leaving Mississippi with no intent to return is viewed in the context of the purpose and circumstances surrounding their move to Ohio.

### F. Other Factors

Where the domicile of a party is in doubt, its determination may require an evaluation several factors. Those factors include where a person's family resides, where he is employed, where his bank accounts are located, where his personal belongings are located, and several other factors relevant to determining the person's intent to remain in a particular location. *Hawes*, 598 F.2d at 701; *American Realty Trust Inc. v. Matisse Partners*, L.L.C., 2002 WL 1359702 (D.C. Tex. 2002); *Markham*, 2002 WL 1291807 * 1. These factors may be especially relevant where a party has two or more residences which might arguably be viewed as his domicile. In this case, while Plaintiffs have not provided any evidence with regard to any of the above-mentioned factors,[6] they are less pertinent since Plaintiffs made it clear that they did not intend to return to Mississippi and had not taken steps to establish a residence in another state besides Ohio. Although Leonard Bergenstein's affidavit does state that "all of his possessions were in storage in Mississippi in June, 2004," (Leonard Bergenstein Aff. ¶ 6), the location of Plaintiffs' possessions prior to the filing of their Complaint does not militate against the court's conclusion that Plaintiffs established a new domicile in Ohio. Viewing the evidence as a whole, this court concludes that Plaintiffs have failed to meet their burden of showing that Ohio was not their domicile at the time they filed their Complaint.

### III. CONCLUSION

At the time of filing their Complaint, Plaintiffs resided in Ohio. They did not maintain another residence outside of Ohio, did not intend to return to Mississippi, and did not have any

---

[6] At a telephonic hearing with the court after the filing of Defendants' motions, the parties agreed that this case was ripe for decision on the issue of subject matter jurisdiction based on the briefing of the parties and that there was no need for an evidentiary hearing.

prospects for leaving Ohio. Plaintiffs had no more than a floating intention to move to a state other than Ohio after Leonard Bergenstein regained his mobility. They came to Ohio for the purpose of obtaining medical treatment and to remain for as long as it took for Leonard Bergenstein to regain his mobility. Furthermore, their leaving Ohio for elsewhere was contingent on where he found a suitable job. In light of these facts, this court finds that Plaintiffs were in fact domiciled in Ohio at the time they filed their Complaint. As Plaintiffs were domiciled in Ohio at the time they filed their Complaint, and all of the Defendants were likewise domiciled in Ohio, this court lacks diversity jurisdiction. As no other basis for federal jurisdiction exists, this court finds that Defendants' Motions to Dismiss must be granted.

For the foregoing reasons, the Motion to Dismiss for Lack of Federal Jurisdiction filed by Defendants Dr. Sawhny, Boyd, and Neurosurgical Assoc. (ECF No. 71) is granted. The Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendant Dr. Grenier (ECF No. 73) is also granted.

The court regrets that Defendants' Motions came at this late stage of the litigation. However, the court cannot act without subject matter jurisdiction. Furthermore, as the court previously noted, subject matter jurisdiction may be raised at any time.

IT IS SO ORDERED.

/s/*SOLOMON  OLIVER,  JR.*
UNITED STATES DISTRICT JUDGE

March 28, 2007